# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILFREDO VASQUEZ**
    **Petitioner,**

  v.               **Case No. 08-C-0664**
                  **(Criminal Case No. 98-CR-104)**

**UNITED STATES OF AMERICA**
    **Respondent.**

## RULE 4 ORDER

Petitioner Wilfredo Vasquez filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate his life sentence for racketeering and drug offenses arising out of his involvement with the Latin Kings street gang. Petitioner indicated that he would file a supplemental memorandum on or before October 21, 2008, and I deferred action on the motion. Petitioner has now filed the supplement, and I will therefore conduct Rule 4 preliminary review.

### I. BACKGROUND

Following a two month trial, a jury convicted petitioner of racketeering (count one), racketeering conspiracy (count two), conspiracy to distribute controlled substances (count three) and distribution of marijuana (count ten). The government presented evidence showing that petitioner was a leader of the Latin Kings, responsible for ordering and carrying out acts of violence designed to enhance the gang's position. The jury specifically found petitioner guilty of various violent offenses charged as predicate acts under the RICO count, including the attempted murder of Spanish Cobras on August 13, 1995; conspiracy to murder Spanish Cobras in August 1995; conspiracy and attempted murder of Maniac Latin Disciples in October 1995; the attempted murder of a 2-1 gang member on November 18, 1995; conspiracy and

attempted murder of an Imperial Gangster in May 1996; the murders of George Staninszeski and Frank Correa, and attempted murder of John Thomas on July 16, 1996; the attempted murder of Eric Caraballo and murder of Daryl Davis on September 2, 1996; the attempted kidnaping and conspiracy to murder Benjamin Drews in November 1996; and the kidnaping of Scott Belhumeur on November 5, 1996.

Based on these predicates, petitioner's offense level under the sentencing guidelines was literally off the chart, producing an imprisonment range of life. I sentenced petitioner to life on counts one and two, 20 years on count three, and 5 years on count ten, all running concurrently. Petitioner appealed, and the Seventh Circuit affirmed his convictions but ordered a limited remand of the sentence pursuant to United States v. Paladino, 401 F.3d 471 (7th Cir. 2005). United States v. Olson, 450 F.3d 655 (7th Cir. 2006). On remand, I considered the factors in 18 U.S.C. § 3553(a) and concluded that I would impose the same sentence under an advisory guideline regime, and the Seventh Circuit then affirmed the sentence as well. United States v. Vasquez, 223 Fed. Appx. 509 (7th Cir. 2007). Petitioner now seeks to vacate that sentence under § 2255.

## II.  SECTION 2255

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir.), cert. denied, 127 S. Ct.

2988 (2007). Consequently, such relief is appropriate only for errors of law that are jurisdictional, constitutional, or constitute a fundamental defect inherently resulting in a complete miscarriage of justice. Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004).

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, the district court must conduct a preliminary review of such motions:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion or other response . . . .

Rule 4(b), Rules Governing § 2255 Proceedings. Under this screening Rule, the district court may dismiss a § 2255 action without holding a hearing or requiring the government to respond if the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005). Likewise, the court may deny the motion summarily if "the petitioner makes conclusory or speculative allegations rather than specific factual allegations." Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995).

### III. DISCUSSION

In the instant motion, petitioner argues that his lawyers provided ineffective assistance of counsel. In order to establish such a claim, petitioner must demonstrate that his lawyers' performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court employs a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689, and a "strong presumption of reliability [of the result]," id. at 696. "[B]ecause counsel is presumed effective, 'a party bears a heavy burden in making out a winning claim based on

3

ineffective assistance of counsel.'" Fountain v. United States, 211 F.3d 429, 434 (7th Cir. 2000) (quoting United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995)).

Petitioner raises six separate claims of alleged ineffectiveness.[1] I address each in turn.

## A.   Failure to Investigate – Attorney Richards

Petitioner first claims that his initial lawyer, Mark Richards, failed to investigate during the time he represented petitioner: June 25, 1998 to November 13, 1998. In order to establish prejudice based on an alleged failure to investigate, the defendant must make a comprehensive showing of what the investigation would have produced and how the results could have aided his defense. See, e.g., United States v. Olson, 846 F.2d 1103, 1109-10 (7th Cir. 1988); see also United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002); United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995); United States ex rel. Simmons v. Gramley, 915 F.2d 1128, 1133-34 (7th Cir. 1990); United States ex rel. McCall v. O'Grady, 908 F.2d 170, 173-75 (7th Cir. 1990).

In his supplement, petitioner indicates that Richards failed to interview individuals who possessed information relevant to proving his innocence. He identifies just one such witness, Carmen Hernandez, claiming that Hernandez was with him during critical times and could have provided alibi testimony. However, petitioner fails to specify the dates on which Hernandez accompanied him or the particular acts regarding which she could have provided an alibi. Nor does he provide an affidavit or other statement from Hernandez demonstrating what she would have said at trial. See Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting claim

---

[1]Petitioner was represented by three lawyers in the original proceedings in this court: Mark Richards during the initial phase of the case (June 25, 1998 to November 13, 1998); Nikola Kostich in the period up to trial (November 13, 1998 to September 13, 2000); and Patrick Blegen at trial and sentencing (September 13, 2000 to April 24, 2001).

4

based failure to interview or call alleged alibi witness, where the defendant presented no evidence other than his own self-serving affidavit); United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (stating that "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim"); Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (rejecting claim based on failure to interview a witness where the defendant produced no affidavit from the witness or any other independent support for his claim). Petitioner says that Hernandez's testimony could have impeached many of the government's witnesses. Again, without some specification of what she would have said, and some showing of how her testimony could have affected the outcome, this is insufficient.

Petitioner also claims that Richards failed to interview an informant working for the government, Benjamin Drews, or to investigate Drews's past. Petitioner states that Drews, along with two others, had been charged in state court with the murder forming the basis for one of the predicate acts, and that these three individuals gave conflicting statements about what happened. However, petitioner fails to provide any specifics as to these conflicting statements or any other explanation as to what the requested investigation would have revealed. Further, petitioner fails to show how the alleged failure to investigate affected the result. By the time of trial, Richards had been off the case for two years; petitioner does not explain how any failure to investigate by Richards in 1998 prejudiced his defense at trial in 2000.[2] As petitioner concedes, after he complained about Richards the court permitted

---

[2]The trial lasted from October 10, 2000 through December 11, 2000.

5

Richards to withdraw and appointed another lawyer, Nikola Kostich. Petitioner makes no showing that the five month period during which Richards represented him was so critical that subsequent investigation by replacement counsel could not undo the damage.

Therefore, even assuming that petitioner advised Richards of these avenues of investigation and Richards did nothing, petitioner makes no showing of prejudice. Thus, this claim must be summarily denied.

**B.    Waiver of Speedy Trial Rights – Attorney Richards**

Petitioner's second claim is that on July 9, 1998, Attorney Richards improperly agreed to waive petitioner's speedy trial rights. Petitioner states that as a result his trial was needlessly delayed for two years, resulting in prejudice. However, this case, which involved thirty-one defendants, multiple counts, sixty-seven RICO predicate acts, and thousands of pages of discovery, clearly qualified as "complex" under 18 U.S.C. § 3161(h)(8)(B)(ii). Further, because defendant was joined for trial with other defendants, his clock under the Speedy Trial Act was essentially linked to their's. See 18 U.S.C. § 3161(h)(7). Petitioner makes no showing of a statutory speedy trial violation under these circumstances.[3] Finally, although the ultimate delay was sufficient to at least trigger scrutiny under the Sixth Amendment's speedy trial provision,[4] see Doggett v. United States, 505 U.S. 647, 651-52 (1992), petitioner fails to specify how the delay hindered his defense. Because he cannot show any prejudice based on his lawyer's

---

[3] In his supplement, petitioner cites Zedner v. United States, 547 U.S. 489 (2006), in which the Court held that a defendant may not prospectively waive application of the Speedy Trial Act for all time. For the reasons stated in the text, the delays in this case did not run afoul of Zedner.

[4] As with the first claim, I also question whether Richards's conduct in 1998 could be said to have had any role in delaying the trial until 2000.

6

action, he cannot make out a claim of ineffective assistance in this regard. See United States v. Asubonteng, 895 F.2d 424, 429 (7th Cir. 1990).

**C.    Rush to Trial – Attorney Blegen**

Third, petitioner claims that the court later rushed the case to trial too fast, not permitting his third appointed lawyer, Patrick Blegen, sufficient time to prepare. However, prior to his appointment, Blegen advised the court that he could be ready for trial. (R. 1544.) More importantly, petitioner fails to specify any deficiencies in Blegen's performance based on the timing, see United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995) ("With regard to the performance prong, defendant must direct us to the specific acts or omissions which form the basis of his claim."), or to explain how he was prejudiced thereby, see United States v. Cronic, 466 U.S. 648, 663-66 (1984) (declining to infer ineffectiveness where the defendant's newly appointed counsel was given only 25 days to prepare for trial, counsel was young and inexperienced, and the case was complex); Davis v. VanNatta, 438 F.3d 707, 712 (7th Cir. 2006) (declining to presume prejudice where the defendant proceeded to trial with an allegedly unprepared counsel). Therefore, this claim must also be denied.[5]

**D.    Failure to Investigate – Attorneys Kostich and Richards**

Fourth, petitioner argues that Attorneys Richards and Kostich failed to investigate certain of the predicate acts and the evidence related thereto. However, he again fails to specify what the sought after investigation would have revealed or to explain how the results of such an

---

[5]In his supplement, petitioner mentions the right to counsel of choice. However, that right does not apply to indigent defendants like petitioner who require court-appointed counsel. See, e.g., United States v. Oreye, 263 F.3d 669, 671 (7th Cir. 2001). Petitioner also argues in the supplement that I abused my discretion in denying a continuance. But this claim alleges ineffective assistance of counsel, and the relevant inquiry is whether any errors by counsel caused prejudice. Petitioner makes no such showing.

7

investigation could have changed the outcome of his trial. See Olson, 846 F.2d at 1109-10.

In his supplement, petitioner indicates that state authorities previously investigated and/or prosecuted certain of the crimes designated as predicate acts in this case, and that counsel failed to review the state case files for possible exculpatory evidence. But absent some indication that the state case files in fact contain helpful information, this is insufficient. I therefore summarily deny this claim as well.

**E.     Failure to Confer – Attorneys Richards and Kostich**

Fifth, petitioner argues that Richards and Kostich failed to meet with him a sufficient number of times or to take his phone calls. But the Sixth Amendment does not guarantee a defendant a certain amount of face time with his lawyer, and petitioner fails to explain how more meetings or conversation with these lawyers would have affected the outcome. See, e.g., United States v. Mealy, 851 F.2d 890, 908 (7th Cir. 1988) (stating that there is no required minimum number of meetings between the defendant and his lawyer, and that the defendant must explain how the lack of consultation affected the outcome of the trial).

In his supplement, petitioner indicates that counsel failed to discuss with him the wisdom of conducting a common defense or the possibility of severance. But petitioner fails to make any showing as to the possible merits of either position, which dooms his claim under the prejudice prong. Likewise, petitioner's effort to blame counsel's failure to research the state case files on their lack of consultation fails absent a showing of what those files contain. The same with the claim that his lawyer(s) failed to interview several law enforcement officers who worked with cooperating witness Drews; petitioner says nothing about what such interviews would have produced or how they could have affected the outcome.

Petitioner argues that I should presume prejudice, but he cites no case adopting such

8

a presumption based on failure to confer, and I have found none. Finally, as with his other claims attacking the performance of Richards and Kostich, petitioner fails to address the fact that neither represented him at trial; nor does he explain how their alleged deficiencies affected the trial's outcome.

**F.     Excessive Caseload(s)**

Petitioner's sixth and final argument is that excessive caseload(s) prevented counsel from providing competent representation. He cites various ethical standards and rules on the subject, but he fails to make a specific demonstration that any of the lawyers involved in his case violated such precepts, or even if they did how such violation affected the outcome of his trial.[6]

Petitioner claims that CJA appointed counsel must accept all appointments, regardless of their caseloads, but under this district's CJA plan that is not so. In any event, petitioner presents no evidence as to the specific caseloads of any of the lawyers involved in his case and, as stated above, makes no showing as to the effects of caseload on their performance.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of October, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[6] Petitioner does not specify which of his three lawyers violated these rules.

9